**[J-99-2013] [MO: Eakin, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

COMMONWEALTH OF PENNSYLVANIA, : No. 39 MAP 2011
:
              Appellee : Appeal from the Order of the Superior
: Court dated August 16, 2010 at No. 2281
: EDA 2008, affirming the Judgment of
           v. : Sentence of the Court of Common Pleas
: of Delaware County, Criminal Division,
: dated March 17, 2008 at No. CP-23-CR-
FRED CHARLES MORAN, : 0004579-2007
:
            Appellant : 5 A.3d 273 (Pa. Super. 2010)
:
: ARGUED: May 9, 2012
: RESUBMITTED: December 17, 2013

## CONCURRING OPINION

**MADAME JUSTICE TODD**             **DECIDED: November 20, 2014**

I join Part I of the Majority Opinion because I agree the evidence was sufficient as a matter of law to establish beyond a reasonable doubt that Appellant's conduct of soliciting from the representative of the developer — Michael Lawry — a $500,000 increase in the purchase price of the parcel owned by Haverford Township in exchange for Appellant's promise to expedite the zoning approval process and to get Lawry the zoning approvals that he needed, constituted an unlawful solicitation of a pecuniary benefit for an entity in whose welfare Appellant was interested — the Township — within the meaning of 18 Pa.C.S.A. §§ 4501 and 4701.

Regarding Part II.A of the Majority Opinion, I also agree with the majority that Section 4701 is not a strict liability statute, as there is no evidence the legislature

intended it to operate in such a fashion; however, I cannot join the majority's conclusion that the default culpability requirements of 18 Pa.C.S.A. § 302(c) ("Section 302") must be utilized in order to supply the requisite *mens rea* for this offense. Neither the plain language of Section 302, nor our prior caselaw, requires the automatic application of Section 302's default culpability requirements in every situation where a criminal statute does not expressly state a requisite level of culpability for the conduct it seeks to penalize, and there is no other indication the legislature intended to make the offense one of strict liability. Rather, Section 302 has a narrower application: it applies only where the "culpability sufficient to establish a material element of an offense is **not prescribed by law**." 18 Pa.C.S.A. § 302 (emphasis added). Consequently, in Commonwealth v. Ludwig, 874 A.2d 623 (Pa. 2005), even though the statute establishing the offense of drug delivery resulting in death did not contain an express culpability standard, we refused to apply Section 302(c) as the default culpability requirement. Our refusal was based on the fact that the statute defined the crime as "third-degree murder." We deemed the legislature's choice of those specific words, coupled with our prior case law designating malice as the proper mental state for third-degree murder, to reflect its intent to incorporate the *mens rea* for third-degree murder into the statute.

Our holding in Ludwig, considered in conjunction with the official comment to Section 302, which explains that it is intended to remedy statutory defects concerning the required mental state and where "there is no expressed requirement concerning the existence of *mens rea,*" 18 Pa.C.S.A. § 302, cmt., indicates that, before Section 302 may be applied, the plain meaning of all of the words of the statute must be examined to determine whether they evidence a legislative intent to establish a particular threshold level of culpability. Accordingly, even when the legislature does not use specific

culpability standards of intentionally, knowingly, recklessly, or negligently in a non-strict liability criminal statute, if a legislative intent to establish a minimum level of culpability can, nonetheless, be discerned from the legislature's utilization of other language indicating a particular *mens rea*, resort to Section 302 is unnecessary. Therefore, where, as here, the plain meaning of the words used by the legislature in defining the criminal offense include an implied culpability standard which requires that an actor engage in intentional conduct, we are not free to disregard such language.

In relevant part, under Section 4701, a public servant is guilty of bribery if he "offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another" a benefit "as consideration for" his official decision, the exercise of his official discretion, or a violation of a duty. 18 Pa.C.S.A. § 4701. Giving these words their common, ordinary meaning,[1] they plainly prohibit a public servant from consciously seeking or accepting a benefit from another in exchange for the public servant's official act. That is, the *quid pro quo* which is at the heart of Section 4701 requires an intentional act by the public servant. Thus, by its terms, Section 4701 establishes a requirement that a public official must act intentionally in order to be convicted thereunder. See 18 Pa.C.S.A. § 302(b)(1)(i) (specifying that a person "acts intentionally with respect to a material element of an offense when . . . the element involves the nature of his conduct or a result thereof, [and] it is his conscious object to engage in conduct of that nature or to cause such a result").

---

[1] "Confer" at the time of the legislature's enactment of Section 4701 in 1972 meant: "to grant or bestow." Webster's Third New Int'l Dictionary 475 (1971). "Agree" meant: "to indicate willingness" or "consent." Id. at 43. "Solicit" meant: "to move to action" or "to strongly urge." Id. at 2169. "Accept" meant: "to receive with consent" (something given or offered). Id. at 10. "In consideration of" meant "as payment or recompense for." Id. at 484.

Significantly, the official comments to Section 240.1 of the Model Penal Code ("MPC"), upon which Section 4701 is based, support the proposition that Section 4701 was intended to criminalize only intentional acts.[2]  These comments indicate that Section 240.1 was intended to reflect "the more conventional formula in bribery legislation," and to distinguish bribery from other crimes of public corruption, it sets forth the gravamen of this offense as one of purposeful action by a public official to accomplish a *quid pro quo* exchange, since it explicitly requires that any benefit sought or accepted by the public official be "'in consideration' of the official action or agreement therefor."  See MPC § 240.1, comment at 197 (1962).  The revised comments to the MPC, issued in 1980, also confirm that Section 240.1 requires intentional conduct.  Relevant to the conduct at issue in the case at bar — a public servant's solicitation of a pecuniary or other benefit — the revised comments state:  "The solicitation aspect of the offense is thus, in effect, a crime of purpose; the actor must have as his conscious objective the receipt of a benefit as consideration for official conduct on his part."  See MPC § 240.1, revised comment at 18 (1980).  Accordingly, I would conclude that Section 4701 has a culpability element, which requires that a person act intentionally with respect to all material elements of this offense.

Because, in my view, Section 4701 requires intentional conduct, I consider it error for the trial court not to have expressly instructed the jury that Section 4701

---

[2]  As the majority notes, Section 4701 almost entirely mirrors MPC § 240.1; thus, the official comments authored by the drafters of the MPC may be considered in interpreting Section 4701, since they had been in existence for nearly a decade at the time our General Assembly enacted Section 4701.  See 1 Pa.C.S.A. § 1939 ("The comments or report of the . . . entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly.")

includes a *mens rea* of intentional conduct, and, also, in failing to define for the jury what constitutes intentional conduct. Whenever the language of a criminal statute requires a defendant to have committed an intentional or voluntary act in order to be convicted, it is error not to provide the jury with an explanation of what constitutes criminal intent. See, e.g., Commonwealth v. Mason, 378 A.2d 807, 808 (Pa. 1977) (holding that because the offense of "voluntary manslaughter contemplates a voluntary act of killing by the defendant" the court's refusal to charge the jury concerning the element of intent was error).

Nevertheless, I join Part II.B of the Majority Opinion because I agree the Commonwealth has demonstrated, beyond a reasonable doubt, that the trial court's error did not alter the outcome of Appellant's trial, inasmuch as the record, which includes Appellant's own characterization of the actions he was taking as extortion, contains overwhelming evidence that Appellant's statements to Lawry in December 2005 were undertaken with criminal intent, i.e., that he made them knowingly, and for the specific purpose of extracting an additional $500,000 from the developer in exchange for his seeing to it that the Township's zoning process was expedited.

Accordingly, for all of these reasons, I concur in the result reached by the majority to affirm Appellant's conviction.