J-E02007-15

2015 PA Super 272

| | |
|---|---|
| IN RE: JOHN MARSHALL PAYNE III | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | |
| Appellant | No. 1113 MDA 2013 |

Appeal from the Order entered May 22, 2013
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-MD-1000291-1986

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, ALLEN, LAZARUS, MUNDY, and STABILE, JJ.

DISSENTING OPINION BY STABILE, J.:        **FILED DECEMBER 29, 2015**

I respectfully dissent.  I believe the Majority fails to apply the correct statutory standard when evaluating whether the trial court erred in granting John Marshall Payne III's (Payne) application for DNA testing under § 9543.1.  When the proper standard is applied, Payne is not entitled to DNA testing because no DNA test results, even assuming exculpatory results, can establish Payne's "actual innocence of the offense for which [he] was convicted."  42 Pa.C.S.A. § 9543.1(c)(ii)(A).  Therefore, I would reverse the order granting Payne's request for DNA testing.

In my opinion, the Majority commits several errors in defining the standard for DNA testing under § 9543.1.  Foremost, the Majority ignores entirely, and in fact does not quote or even cite, the statutory *prima facie*

burden imposed upon an applicant under § 9543.1(c)(3) that must be satisfied before testing can be ordered; *i.e.*, the presentation of a *prima facie* case that testing, assuming exculpatory results, would establish "actual innocence." Instead, the Majority ignores this initial burden and focuses exclusively upon the subsequent record review to be conducted by a trial court under § 9543.1(d)(2), which is to be considered only if a *prima facie* showing of actual innocence is first made in the motion for testing. The Majority is certain to diminish and dismiss the importance of a *prima facie* showing by stating that "[t]he sole issue for our review concerns the application of the standard set forth in Section 9543.1(d)(2) and 9543.1(d)(2)(i)," thereby placing sole controlling emphasis for testing on a trial court's record review. Majority Opinion at 15. Compounding this error further, the Majority, ignoring well-established rules of statutory construction, proceeds to define the unambiguous term "actual innocence" by reference to **Commonwealth v. Conway**, 14 A.3d 101 (Pa. Super. 2011), which relies upon inapplicable federal habeas corpus jurisprudence. No attempt is made to distinguish **Conway** from other of this Court's precedent in conflict with the standard articulated in that decision. The Majority rewrites the statutory "actual innocence" standard under § 9543.1 to require DNA testing if testing would simply "make it more likely than not" that no reasonable juror would find the defendant guilty beyond a reasonable doubt. Majority Opinion at 15. This court-created standard is far afield from the statutory standard of "actual innocence" provided by our

Legislature. The Majority converts the clear and unambiguous standard of "actual innocence" for DNA collateral relief to one of a preponderance of proposed evidence that allows testing if a mere possibility exists that a jury's verdict might have changed. I do not believe this interpretation was ever intended by our Legislature when it provided for collateral relief based upon a standard that must demonstrate "actual innocence."

The parameters for DNA testing are exclusively set forth under the statutory provisions of § 9543.1.[1] By necessity, our analysis must begin and end with the statutory language provided by our Legislature under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46. "When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the **statutory requirements** listed in [42 Pa.C.S.A. §] 9543.1." ***Commonwealth v. Williams***, 35 A.3d 44, 47 (Pa. Super. 2011) (emphasis added).

In relevant part, § 9543.1, relating to post-conviction DNA testing, provides:

> **(a) Motion.—**
>
> > (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of

---

[1] I note there is no federal constitutional right to post-conviction DNA testing. ***District Attorney's Office for the Third Jud. Dist. v. Osborne***, 557 U.S. 52, 55-56 (2009).

forensic DNA testing on specific evidence that is related to the investigation or prosecution **that resulted in the judgment of conviction**.

\*\*\*

**(c) Requirements.--**In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted[.]

\* \* \*

**(3) present a *prima facie* case demonstrating that the**:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

**(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:**

**(A) the applicant's actual innocence of the offense for which the applicant was convicted**[.]

**(d) Order.--**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a

- 4 -

determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

**(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:**

**(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted**[.]

42 Pa.C.S.A. § 9543.1(c)-(d) (emphasis added) (provisions concerning capital cases omitted).

The above provisions set forth clear procedures to be followed in order for post-conviction DNA testing to be ordered by a court. First, the motion for DNA testing must relate to the judgment of conviction. 42 Pa.C.S.A. § 9543.1(a). This prerequisite defines the relevant parameters against which the proposed testing is to be measured. Here, Payne was convicted of second-degree (or felony) murder, aggravated assault, burglary, and

conspiracy.[2]  Second, the applicant must state, under penalty of perjury, the specific evidence to be tested, must consent to samples of bodily fluid for DNA testing, and must acknowledge that any data obtained from testing may be entered into databases and may be used against him or her in any other cases. 42 Pa.C.S.A. § 9543.1(c)(2).  The applicant also must assert "actual innocence" of the offense that resulted in the conviction.  *Id.*  The required averment is one of actual innocence, not one of merely asserting not guilty beyond a reasonable doubt.  Third, and perhaps most important, the motion must set forth on its face a ***prima facie*** case demonstrating that the identity of, or participation in the crime by, the applicant is at issue, and that DNA testing, assuming exculpatory results, would establish the applicant's **actual innocence** of the offense for which he or she was convicted.   42  Pa.C.S.A.  § 9543.1(c)(3).   Only **after** an applicant has satisfactorily presented a motion demonstrating a *prima facie* case that DNA testing, assuming exculpatory results, would establish actual innocence, is a court then obligated to review the record of the case independently to determine if there is a reasonable possibility the DNA exculpatory evidence would  establish  actual  innocence.   42  Pa.C.S.A.  §  9543.1(d)(2).   If the motion does not satisfy the *prima facie* threshold then the motion should be

_____

[2] I recognize Payne's conviction for conspiracy was reversed on a statute of limitation determination.  I have included it here only for purposes of factual completeness.

denied without a record review. If the motion passes muster, the record review requires that the court essentially scrutinize the applicant's theory of DNA testing against the trial record. Assuming the applicant's motion has demonstrated a *prima facie* showing of actual innocence based upon the proposed DNA testing, a court may only then refuse testing if it determines that the applicant's theory cannot be reasonably supported by the trial record. This record review, however, does not diminish the *prima facie* showing of "actual innocence" based upon exculpatory DNA testing that first must be satisfied by an applicant before testing can be ordered. This procedure is entirely consistent with this Court's prior precedent in **Williams** wherein we said:

> The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.

**Williams**, 35 A.3d at 50 (citing **Commonwealth v. Smith**, 889 A.2d 582, 585-86 (Pa. Super. 2005), *appeal denied*, 905 A.2d 500 (Pa. 2006)). For reasons unclear to this author, the Majority did not recite or discuss the mandatory language of § 9543.1(c)(3)(ii)(A) in the "pertinent statutory language at issue" in this case. **See** Majority Opinion at 13-15. The Majority, as mentioned above, focused instead only upon § 9543.1(d)(2), *i.e.*, the court's later independent record review after a *prima facie* case has

been demonstrated. Rather than consider the statutory mandate of §9543.1(c)(3)(ii), the Majority instead looked to **Conway** for a definition of "actual innocence," stating:

> In **Conway,** 14 A.3d at 109, this Court applied a definition of "actual innocence" taken from "the United States Supreme Court in its Opinion in **Schlup v. Delo**, 513 U.S. 298, 327 [] (1995), namely, that the newly discovered [DNA] evidence must make it 'more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.'"

Majority Opinion at 15 (quoting **Conway**, 14 A.3d at 109) (brackets and language inserted in brackets in original). **Conway** not only ignored established principles of statutory construction by looking to federal law to define "actual innocence," but also wrongly relied upon inapplicable federal habeas corpus jurisprudence that predated the passage of our DNA testing statute.[3]

In further justification to rewrite § 9543.1, the Majority holds that § 9543.1 is a remedial statute and therefore must be interpreted liberally. Majority Opinion at 13; **see also Conway**, 14 A.3d at 113-14 (quoting the legislative history of § 9543.1). However, this Court cannot disregard the letter of the law in favor of pursuing its spirit. As we have stated:

> Pennsylvania's Statutory Construction Act, 1 Pa.C.S. § 1921, focuses our review and negates any consideration of matters extraneous to the statutory language except in instances where such language is ambiguous. *See* 1 Pa.C.S. § 1921(b) ("When

---

[3] **Schlup** was decided in 1995. Our DNA testing statute was added to the PCRA in 2002.

the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

*Commonwealth v. Moran*, 5 A.3d 273, 279-80 (Pa. Super. 2010). "A statute's plain language generally provides the best indication of legislative intent." *Commonwealth v. McCoy*, 962 A.2d 1160, 1166 (Pa. 2009). Here, there is no need to resort to federal case law to define the statutory term "actual innocence," as the term is clear and unambiguous on its face. The term is capable of being construed according to its plain meaning. "Actual innocence" plainly means that the defendant did not commit the crime for which he or she was convicted. The plain meaning of the term does not admit standards of reasonableness, probability, or reasonable doubt into its connotation. Therefore, when § 9543.1(c)(3) states that an applicant shall plead and demonstrate a *prima facie* case that exculpatory DNA evidence would establish "actual innocence," the statute plainly requires that the applicant demonstrate in a motion that the exculpatory DNA evidence would establish that he or she did not commit the crime of which they were convicted. As discussed herein, I find Payne's motion did not demonstrate a *prima facie* case of actual innocence and, therefore, a record review by the trial court was unnecessary. The motion should have been denied.

My disagreement with the Majority's reliance upon *Conway* goes beyond mere disagreement on how or when to define a term. Simply stated, the court-created standard enunciated in *Schlup*, upon which

*Conway* relies, has no bearing on Pennsylvania's statutory standard under § 9543.1. *Schlup* clarified the federal standard that must be met when innocence is claimed and a conviction is alleged to be the result of a constitutional error. *Schlup* concerned a federal habeas corpus proceeding wherein the United States Supreme Court addressed the appropriate standard to be applied when a petitioner alleges actual innocence and a conviction based on a constitutional violation, where the violation would ordinarily be barred from being considered on its merits. As explained in *House v. Bell*, 547 U.S. 518 (2006), as a general rule, claims forfeited under state law may support federal habeas corpus relief only if a prisoner demonstrates cause for default and prejudice from the asserted error. *Id.* at 536. This bar, however, is not unqualified, such as when there is a miscarriage of justice. *Id.* In *Schlup*, adhering to this general principle, the Court held that prisoners asserting innocence as a gateway to defaulted state claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House* at 537 (quoting *Schlup*, 513 U.S. at 327). This stands in contrast to review of a federal freestanding innocence claim where no constitutional error is alleged and the burden then is one of clear and convincing evidence of innocence. *See Herrera v. Collins*, 506 U.S. 390 (1993). Moreover, unlike § 9543.1, these federal standards are not limited to evaluating DNA evidence. As is apparent, the difference in federal law between gateway claims of innocence alleging constitutional error and

freestanding innocence claims without constitutional error do not involve or implicate state-level collateral relief proceedings under our PCRA. Nor do they interpret statutory provisions like § 9543.1. Quite simply they are irrelevant to the issue before this Court. The Majority's use of federal habeas corpus standards to define "actual innocence" under § 9543.1 is wholly without foundation and is inconsistent with our rules of statutory construction. Nothing in the text of the PCRA statute indicates that the General Assembly intended to import a federal habeas corpus standard into the DNA testing provisions of our PCRA.

Turning now to the merits of Payne's motion, we first must examine the crimes of which Payne stands convicted to determine if Payne has met the required *prima facie* showing of actual innocence under 9543.1(c)(3)(ii). As stated, Payne was convicted of second-degree or felony murder, aggravated assault,[4] and burglary. The trial court charged the jury on the elements of these crimes and, more importantly, instructed the jury that Payne could be found guilty of any of them based upon his own acts, or as an accomplice of others who committed the crimes. N.T. Trial (Jury Charge), 8/18-8/22/86, at 713 (burglary), 715-16 (accomplice liability generally), and 719 (homicide). Therefore, and in particular regard to the victim's murder, a jury could find Payne guilty of this murder (and in fact

---

[4] The conviction for aggravated assault was merged into the murder conviction.

did) even if he was not present in the victim's bedroom at the time the murder was committed, based upon his guilt as an accomplice. Any theory of actual innocence pled by Payne in his motion for DNA testing, by necessity, would have to establish that he was not present at all at the scene of the crimes. Simply establishing that someone else may have committed or did commit the actual crimes of which he was convicted, or that someone else also may have been present during the commission of the crimes, would not establish Payne's actual innocence of guilt as an accomplice to these crimes.

In his motion, Payne seeks DNA testing of a) brown head hairs, b) a brown pubic hair, and c) specimens of human blood. Payne Petition, 6/14/12, at ¶ 10. Payne maintains these specimens were found on the nightgown, bedsheet, and blanket of the victim and that DNA testing will show these specimens came from a Caucasian, demonstrating this person was in the victim's bedroom. *Id.* at ¶¶ 11, 21. Finally, Payne contends that since the assault upon the victim was extremely violent, the blood samples will exclude Payne as the source of this blood and will result in the identity of the victim's killer. *Id.* at ¶¶ 23, 24. Upon these bases, Payne asserts his actual innocence of the crimes committed. Even accepting as true Payne's assertion these specimens came from someone other than Payne himself, this proof would not eliminate Payne from being present at the crime scene, or eliminate him as an accomplice during the commission of the crimes of which he was convicted. Under relevant law, Payne could be

convicted of the underlying crimes without ever having entered the victim's bedroom.[5] This is especially significant, as the Commonwealth's theory of the case was that Payne committed the crimes in concert with others. To this end, the Commonwealth introduced into evidence the testimony of three witnesses who testified that Payne confessed to his role in the criminal enterprise. Further demonstrating his guilt, Payne admitted he contacted one Commonwealth witness and attempted to influence her testimony in his favor. It appears the jury returned a verdict of guilty based largely on this circumstantial evidence. Therefore, I do not believe Payne's motion for DNA testing satisfied the threshold *prima facie* case that, assuming exculpatory results, *i.e.*, either the absence of Payne's DNA or the presence of someone else's, the evidence would demonstrate Payne's actual innocence of the crimes of which he was convicted. Accordingly, Payne's motion should have been denied without further review. This determination would have made it unnecessary for the court to proceed further and conduct its own review of the record under 9543.1(d)(2).

Finally, in another regard I find the Majority's legal analysis puzzling and hard to follow. At one point, the Majority notes its agreement with the Commonwealth and acknowledges this Court's previous holdings to the

---

[5] The Majority acknowledges, Payne "might have been convicted of second-degree murder as an accomplice to the underlying burglary even in the absence of a conspiracy conviction." Majority Opinion at 25. **See** 18 Pa.C.S.A. § 306(c) (defining accomplice liability).

effect that the absence of an accused's DNA evidence—by itself—cannot satisfy § 9543.1(d)(2)(i)'s "actual innocence" standard. **See** Majority Opinion at 18-21 (citing **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005); **Smith**, 889 A.2d at 586 (Pa. Super. 2005); and **Commonwealth v. Brooks**, 875 A.2d 1141 (Pa. Super. 2005)). The Majority announces, and I concur, that:

> [T]o the extent that the Commonwealth asserts that the absence of Payne's DNA on the items to be tested would not, by itself, establish a *prima facie* case that he is actually innocent, we agree. Additionally, there are no circumstances in this case that, in combination with the absence of Payne's DNA in a specific location, would demonstrate his actual innocence.

Majority Opinion at 22. However, despite acknowledging that the absence of Payne's DNA cannot demonstrate his actual innocence, the Majority inexplicably forges ahead, accepting Payne's "data bank theory" that suggests the actual killer **might** be revealed by comparing DNA test results with state and national databases. **Id.** I agree with the Commonwealth that Payne's data bank theory is insufficient for him to meet his burden. Sections 9543.1(c)(3) and (d)(2) focus on the **applicant's** actual innocence—not some possible, speculative result that an unrelated third party's DNA, or even an accomplice's DNA, might be found.

Ultimately, the Majority appears to rest its "someone-else's-DNA-plus" standard on the unsupported theory that DNA from one of the Commonwealth's witnesses could be identified by testing, thereby seriously

- 14 -

undermining the Commonwealth's case. *See* Majority Opinion at 27-28. There is not a scintilla of evidence that supports the Majority's speculation— not even Payne's petition. Instead, I would accept the Commonwealth's argument, which echoes the well-ensconced maxim that "the absence of evidence is not evidence of absence." *See, e.g., Heilman*, 867 A.2d at 546-47.[6] As the Commonwealth aptly explained, where—as here—a person is convicted of felony murder without the aid of any physical evidence linking him to the crime, it is obvious the jury was not swayed by the absence of physical evidence in the first instance. Commonwealth Resubmitted Brief at

_____

[6] In *Heilman*, we explained:

> On its face, the *prima facie* requirement set forth in § 9543.1(c)(3) and reinforced in § 9543.1(d)(2) requires an appellant to demonstrate that favorable results of the requested DNA testing "*would establish*" the appellant's actual innocence of the crime of conviction. Heilman has failed to make such a demonstration, nor could he. In DNA as in other areas, an absence of evidence is not evidence of absence. Furthermore, a murder suspect may be convicted on wholly circumstantial evidence, of which there was plenty in this case.

*Id.* (citation omitted) (emphasis in original). Even the PCRA court recognized, "To put it plainly, if the jury had believed that there were three intruders then the simple fact that none of the DNA matched [Payne] does not preclude [Payne] from having been present. It is entirely possible, through luck or concealment, that [Payne] left no DNA behind." PCRA Court Opinion in Support of Order, 5/22/13, at 9. Nevertheless, the PCRA court later speculated, "A jury might indeed have placed more emphasis on the weaknesses of [the] Commonwealth's case if there were DNA evidence introduced and it did not directly tie [Payne] to the murder scene." PCRA Court Rule 1925(a) Opinion, 8/14/13, at 12. This speculation clearly falls short of the requirement in § 9543.1(c)(3) and § 9543.1(d)(2) that the applicant demonstrate testing "would establish" his "actual innocence."

20.   Therefore, it follows that "new" physical evidence augmenting the dearth of incriminating physical evidence or, at best, implicating an accomplice, is not *ipso facto* grounds to find *prima facie* evidence that Payne is actually innocent of the crimes of which he was convicted.

In conclusion, I respectfully dissent from the Majority because I believe Payne failed to set forth a *prima facie* case of actual innocence in his motion for DNA testing.  It also is my belief the Majority has ignored critical provisions of the DNA testing statute and, further, has rewritten the applicable standard of "actual innocence" under §9543.1 to a mere preponderance of evidence based upon inapplicable federal habeas corpus law and in disregard of our rules of statutory construction.

President Judge Gantman concurs in the result.