IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 39 MAP 2011 |
| | : |
| Appellee | : Appeal from the order of Superior Court |
| | : dated 08-16-2010 at No. 2281 EDA 2008, |
| | : reconsideration denied 10-13-2010, |
| v. | : affirming the judgment of sentence of |
| | : Delaware County Court of Common Pleas, |
| | : Criminal Division, dated 3-17-2008 at No. |
| FRED CHARLES MORAN, | : CP-23-CR-0004579-2007 |
| | : |
| Appellant | : ARGUED:  May 9, 2012 |
| | : SUBMITTED:  December 17, 2013 |

## OPINION

**MR. JUSTICE EAKIN**                                **DECIDED:   November 20, 2014**

This appeal by Fred Charles Moran challenges the sufficiency of the evidence in support of his conviction for bribery in official and political matters, 18 Pa.C.S. § 4701.  It also raises the question of whether this is a strict liability crime, and if not, requires us to determine the appropriate mens rea for such offense.  We hold § 4701 is not a strict liability crime; the mens rea for this offense is the Crimes Code's "default" culpability provision, id., § 302(c).  As such, there was sufficient evidence to support appellant's conviction.  We further hold that while the trial court erred in its instructions to the jury regarding intent, such error was harmless here.  Accordingly, we affirm.

In 2003, appellant was an elected member of the Board of Commissioners of Haverford Township, Delaware County.  The board decided to sell a 209-acre parcel of land on which the former Haverford State Mental Hospital was located.  Appellant and Commissioner George Twardy comprised the "liaison committee" authorized to negotiate

with potential buyers on behalf of the township.  The firm of Goldenberg-Pohlig (GP) entered a preliminary sales agreement with the board, pursuant to which GP would pay $30.65 million for 61 acres of the parcel, on which it would develop residential properties and build six ball fields; GP paid a refundable $5 million deposit to the township.

In 2004, appellant and Twardy were removed from the liaison committee.  One of their replacements, Commissioner Andrew Lewis, believed the agreement with GP was unworkable; he learned GP intended to develop an additional 15 acres beyond what it paid for, and the ball fields could not be constructed due to steep topography.  The board formally rescinded the prior preliminary sales agreement and authorized the continuation of negotiations with GP.

In November, 2005, the parties reached a new agreement; GP would pay $17 million for 38 acres, on which it would develop "age-restricted" condominiums and carriage houses, along with single-family homes.  The parties subsequently verbally altered its terms, such that GP would donate an additional $500,000 to the township for construction of a nature center or walking trails on the parcel; in exchange, the condominiums and carriage houses were more loosely designated as "age-targeted" and GP was no longer obligated to construct single-family homes.  The board formally approved these new terms and authorized preparation of a written final sales agreement.

On December 19, 2005, the board held a special public meeting to address a looming revenue shortfall for the upcoming year.  During the meeting, as Lewis recalled in his trial testimony, appellant proposed accelerating the collection of real estate taxes as a way to raise revenue; particularly, he suggested having GP pre-pay $500,000 of the 2006 realty taxes on the 38-acre parcel.  See N.T. Trial, 11/19/07, at 104.  When another commissioner asked appellant why GP would consider pre-paying these taxes, appellant responded, "[W]ell, maybe they want to accelerate this process, get it moving."

Id.  Appellant expressed displeasure with the prospect of budget cuts and stated the township "should have income coming in from [the parcel]."  Id.  Lewis suggested he and appellant call a representative of GP so appellant could present his proposal.  Id.

The next day, Lewis and appellant had a phone conversation with Michael Lawry, a principal with GP.  Lewis informed Lawry the board was addressing a budgetary shortfall and told him appellant had a proposal.  Appellant then said to Lawry, "[C]all it extortion, call it what you will.  We need $500,000, and we'll accelerate the zoning.  We'll get you the zoning approvals you need and accelerate the process."  Id., at 112.  Lewis recalled Lawry asked whether the $500,000 was included in the $17.5 million, and appellant indicated it would be added to the purchase price.  See N.T. Trial, 11/20/07, at 93.  Lawry responded he was not in a position to answer but would discuss the matter with others at GP and get back in touch with appellant and Lewis.  A few minutes later, Lewis called Lawry back and told him, "I want no part of that conversation.  Haverford Township is not in the business of selling zoning."  N.T. Trial, 11/19/07, at 113.  Lewis testified he called appellant the next day and essentially told him the same thing.  Id.

No one from GP took any formal action in response to appellant's offer, and the parcel's sale price remained unchanged.  The parties did not finalize a contract of sale until April, 2007, which the board formally approved in May, 2007.

In April, 2007, appellant was charged with three counts of bribery, one for each of the three subsections of 18 Pa.C.S. § 4701, which provides:

> (a) Offenses defined.--A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:
>
>> (1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.

Id., § 4701(a).

At trial, appellant requested the trial court instruct the jury it could convict him only upon proof of the mens rea prescribed in 18 Pa.C.S. § 302(c), which provides general culpability requirements apply when a criminal statute does not include an explicit mens rea.[1] The trial court denied appellant's request, concluding in light of the language of § 4701 and the compelling evidence of appellant's intent, an instruction regarding § 302(c) was unnecessary. Over appellant's objection, the trial court gave a jury charge on bribery that tracked the language of § 4701(a) and was substantially similar to Pennsylvania Suggested Standard Jury Instruction 15.4701B.[2] During deliberation, the

---

[1] Specifically, § 302(c) provides: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." Id. (emphasis added).

[2] The trial court charged the jury:

Ladies and gentlemen, you've been told here, and told again, that the Defendant, Fred Moran, has been charged with Bribery. In order to find him guilty of this offense[,] you must find the elements have been proven beyond a reasonable doubt. First, that the Defendant solicited from Michael Lawry the sum of $500,000 as additional payment for the purchase of township real estate, and also that the money was solicited as consideration for the decision, opinion or recommendation, vote or exercise of discretion in land or zoning approvals of the Defendant as a public servant. That [sic] is a Haverford Township commissioner. Or, also, the Defendant solicit[ed] from Michael Lawry the sum of $500,000 as additional payment for the purchase of township real estate, and also that the money was solicited as consideration for the decision, vote, recommendation, exercise of official discretion in land development and/or zoning approvals

(continued…)

jury twice requested the trial court repeat the definition of bribery; the trial court reread its initial charge both times, and appellant objected each time. The jury convicted appellant of all three counts of bribery, and he was sentenced to an aggregate term of six months probation and a $10,000 fine.

Following the denial of his post-sentence motions, appellant appealed to the Superior Court, arguing the evidence was insufficient to establish he acted with the intent to gain an unlawful benefit because he would not have received any direct or personal benefit from the $500,000 he solicited from GP and Lawry. Appellant further claimed the trial court abused its discretion in denying his requested jury charge regarding culpability as defined in § 302(c).

---

(…continued)

> of the Defendant, the administration [sic] or a legislative proceeding. Or also the Defendant solicited from Michael Lawry the sum of $500,000 as additional payment for the purchase of real estate, and that the money was solicited as consideration for a violation by the Defendant of the known legal duty as a public servant. Specifically, a Haverford Township commissioner. Under Pennsylvania law, a Haverford Township commissioner has a duty to faithfully discharge the duties of this office, and to refrain from receiving, directly or indirectly, any money or other value [sic] thing in the performance or nonperformance of any act or duty. The term benefits means a gain, or advantage or anything regarded by the Defendant as gain or advantage. The benefit did [not] have to be a direct benefit to the Defendant. The term benefit includes a benefit to any other person, political party or entity in whose welfare the Defendant was interested. The term public servant includes any Haverford Township commissioner. Public proceedings and votes on resolutions and ordinances concerning land development and zoning are conducted by the Haverford Township Board of Commissioners, and are there for [sic] administrative and legislative proceedings. If[,] after considering all of the evidence[,] you are satisfied that the elements of Bribery have been proven beyond a reasonable doubt, then you should find the Defendant guilty of Bribery. Otherwise, you must find the Defendant not guilty of this charge.

N.T. Trial, 11/20/07, at 236-39.

The Superior Court rejected appellant's sufficiency claim and found no abuse of discretion in the trial court's refusal to instruct the jury in conformity with § 302(c). Commonwealth v. Moran, 5 A.3d 273, 275 (Pa. Super. 2010). In rejecting appellant's sufficiency claim, the court first noted while § 4701(a)(1) premises a conviction on receipt of "pecuniary benefit," 18 Pa.C.S. § 4701(a)(1), the definition offers no discussion of the extent to which a bribe must benefit a defendant directly,[3] and "subsections (a)(2) and (a)(3) require only a 'benefit,' which need not be pecuniary[.]" Moran, at 279. Because the definition of "benefit" encompasses indirect gain,[4] it was irrelevant that appellant would receive no personal enrichment from the transaction he proposed; the court found no ambiguity in § 4701 regarding the prohibited conduct or the recipient of the benefit:

> Plainly put, no person in public service may solicit a benefit as a quid pro quo for his exercise of the official discretion he holds. Although that prohibition extends, as [appellant] concedes, to those who would enrich themselves, it extends no less to those who, under color of government authority, extract a benefit payable to others.

Moran, at 280 (internal citations omitted). Accordingly, the court concluded appellant's attempt to secure half a million dollars to enrich the township in exchange for his exercise of official discretion in expediting the zoning approval for GP fell within the ambit of conduct proscribed by § 4701. Id., at 280-81.

Turning to the issue of culpability, the court noted the level of intent was arguably implicit in the statute; the use of the phrase "solicits, accepts or agrees to accept," which are inherently volitional terms, indicated culpability "depends upon evidence of a

---

[3] 18 Pa.C.S. § 4501 defines "pecuniary benefit" as: "Benefit in the form of money, property, commercial interests or anything else the primary significance of which is economic gain." Id.

[4] 18 Pa.C.S. § 4501 defines "benefit" as: "Gain or advantage, or anything regarded by the beneficiary as gain or advantage, including benefit to any other person or entity in whose welfare he is interested ...." Id. (emphasis added).

conscious mind, actively engaged in retaining the prohibited benefit." Id., at 281. The court acknowledged, however, it previously held the bribery statute does not specify the required level of culpability, and therefore, § 302(c)'s general culpability standard was the applicable mens rea for § 4701. Id., at 281-82 (quoting Commonwealth v. Parmar, 672 A.2d 314, 318 (Pa. Super. 1996)).[5] Thus, the court applied § 302(c)'s measure of culpability, as adopted in Parmar, and concluded the "circumstances coupled with [appellant]'s own blunt and forceful language ma[d]e his intent abundantly clear" and the evidence was sufficient to sustain his conviction. Moran, at 282.

Based on the language appellant used in the conversation and the circumstances surrounding it, the court further concluded the trial court's refusal to instruct the jury regarding the applicability of § 302(c)'s culpability provision was harmless error. Id., at 283 (citation omitted). While noting under Parmar, "courts are well-advised to instruct the jury in accordance with [§ 302(c)] in prosecutions for bribery[,]" the court held § 4701's language suggested a conviction must be based on evidence of consciously engaging in retaining the prohibited benefit; therefore, "[a] level of intent so implied in the substantive elements of [§] 4701, which exceeds the threshold enunciated by [§] 302, obviously satisfies [§] 302." Id. Because appellant's conduct was "flagrantly intentional," the court concluded the absence of an instruction on § 302 did not affect the verdict; the trial court's repeated instructions on the elements of the crime, using both § 4701 (defining bribery) and § 4501 (defining benefit), were ample to guide the jury's deliberation. Id. Therefore, any error in refusing to charge the jury specifically on § 302(c)'s mens rea was

---

[5] On appeal to this Court, the Superior Court's decision was affirmed by an evenly divided Court. Commonwealth v. Parmar, 710 A.2d 1083 (Pa. 1998). The Superior Court did not reference or discuss this Court's Parmar decision.

harmless, and appellant was not entitled to a new trial. Id. (citation omitted). Accordingly, the court affirmed the judgment of sentence.

Judge Kelly dissented from the conclusion that refusal to instruct on § 302(c)'s mens rea was harmless error. Relying on Commonwealth v. Woosnam, 819 A.2d 1198, 1206-07 (Pa. Super. 2003) (holding failure to instruct jury on 18 Pa.C.S. § 302(b)(4)'s mens rea requirement of negligence, as applicable to 75 Pa.C.S. § 3742, was reversible error warranting new trial), the dissent noted the jury twice asked the trial court to repeat the definition of bribery and appellant's counsel argued the jury may have been confused by the lack of a culpability requirement in the bribery instruction given. Moran, at 284 (Kelly, J., dissenting). Thus, the dissent could not conclude beyond a reasonable doubt that the trial court's refusal to instruct the jury regarding § 302(c)'s culpability requirement did not contribute to the verdict; Judge Kelly would have remanded for a new trial. Id. (citation omitted).

We granted allocatur to address the following issues raised by appellant:

(1) Did the trial judge abuse his discretion in refusing to grant [appellant]'s request that the jury be instructed that [appellant] cannot be convicted of bribery unless the Commonwealth proves that [appellant] acted with criminal intent? Could such an error be harmless in a case where the sole issue was whether [appellant] acted with criminal intent?

(2) Was the evidence sufficient to prove beyond a reasonable doubt that [appellant] was guilty of bribery under 18 Pa.C.S. § 4701 in the respect that there was inadequate proof that [appellant] acted with criminal intent?

Commonwealth v. Moran, 17 A.3d 918 (Pa. 2011) (per curiam).

## I. SUFFICIENCY OF EVIDENCE

We will first address the sufficiency of the evidence with respect to the requisite intent under 18 Pa.C.S. § 4701. Appellant argues the evidence was insufficient because although he "unwisely spoke of expediting the zoning process," he did not do so with a

corrupt intent or the desire to gain an unlawful benefit. Appellant's Brief, at 8. Appellant avers he engaged in no criminal solicitation since he was merely attempting to persuade GP to raise the purchase price it would pay for the parcel, and he neither requested nor received any personal pecuniary benefit from GP. Appellant discounts the trial court's finding he would have received a benefit in the form of an enhanced political advantage in the eyes of township voters, reasoning such "voter reaction analysis" is purely speculative and could, in fact, trample on his constitutional rights to free speech and political association. Id., at 10-11.

Appellant posits the Superior Court's decision will create tremendous uncertainty among governmental officials, as well as entities and individuals with legitimate business interests before governmental bodies, since it allows any discretionary act by officials in exchange for action by an entity or individual, such as having a land developer install a park or improvements in exchange for the municipality's waiver of an ordinance, to result in a criminal prosecution for bribery. Appellant asks this Court, as a matter of policy, to rule a public official should not be prosecuted for bribery simply because he used his public position to enhance the amount of money received by the political entity that elected him. Appellant contends the legislature did not enact § 4701 to punish aggressive politicians but, rather, to protect the public from elected officials seeking to achieve pecuniary or personal gain for themselves or their political allies.

The Commonwealth responds that, under the plain meaning of § 4701's language and § 4501's definition of benefit, a person who offers to exercise official discretion in exchange for a benefit need not receive the benefit personally to be guilty; in this view, a person may be convicted as long as he is interested in promoting the welfare of a beneficiary on whose behalf he is soliciting the benefit. The Commonwealth contends the evidence proved appellant specifically linked the township's expeditious zoning

approval to the payment of extra monies by GP; the township, an entity in which appellant was interested as a politically elected official, a public servant, and a taxpayer, would receive an extra $500,000 if appellant's solicitation was successful. The Commonwealth echoes the trial court's position that appellant would also receive a personal benefit in the form of esteem in the eyes of the community and fellow board members, as well as the enhancement of future political aspirations. The Commonwealth claims these personal rewards comport with § 4501's definition of benefit, which includes "'anything regarded by the beneficiary as gain or advantage.'" Commonwealth's Brief, at 25 (emphasis omitted) (quoting 18 Pa.C.S. § 4501).

The Commonwealth additionally maintains appellant's position would create an affirmative "public servant" defense to the crime of bribery, exempting public officials if the value they want in return for their action benefits a political entity or the public. The Commonwealth argues such a defense would contravene the purpose of the statute, which it perceives as the prohibition of "'selling political endorsement or special influence.'" Id., at 27 (emphasis omitted) (quoting 18 Pa.C.S. § 4701 cmt.). The Commonwealth finds support for this assertion from the comment to § 240.1 of the Model Penal Code (MPC), upon which § 4701 was based,[6] which provides, "[P]ayments in order … to respond to extortionate threats by public officials are within the prohibition [of the bribery statute.]" MPC § 240.1 cmt. The Commonwealth views the exception appellant proposes as harmful to the public welfare since it creates the likelihood that favorable governmental action could be lawfully conditioned on the payment of money into the public treasury; this would present significant constitutional concerns, offending

---

[6] See 18 Pa.C.S. § 4701 cmt. (specifying that statute was derived from MPC § 240.1). Model Penal Code § 240.1 differs only in that its subsection 2 does not cover legislative proceedings, as does § 4701(a)(2), and the placement of the word "recipient" is different in its subsection 1 than in § 4701(a)(1).

principles of equality, impartiality, and integrity, which have been the traditional hallmark of governmental decision making.

Finally, the Commonwealth rejects the notion that appellant should be excused simply because he subjectively believed he was acting only to promote the township's best interests. The Commonwealth contends such subjective belief is irrelevant under § 4701 since the statute does not require proof appellant acted with a corrupt purpose; rather, in the Commonwealth's assessment, all it must demonstrate is "the defendant's intentional, knowing, reckless, or negligent conduct 'with respect to each material element of the offense.'" Commonwealth's Brief, at 31-32 (quoting 18 Pa.C.S. § 302(a)).[7]

In his reply brief, appellant disputes the Commonwealth's assertion that a conviction for bribery is proper where the benefits sought are for the public and not an individual. Appellant notes the legislature exempted from § 4501's definition of benefit "'advantages [sic] promised generally to a group or class of voters as a consequence of public measures which a candidate engages to support or oppose.'" Appellant's Reply Brief, at 10 (quoting 18 Pa.C.S. § 4501). Appellant suggests "balancing of the Township's budget and the ability to avoid the need for a tax increase certainly fits within this category." Id. Appellant further contends the Commonwealth's construction of benefit disregards the principle that penal statutes are to be strictly construed. Appellant points out municipal officials are duty bound "to govern in a manner that maximizes the interests, safety and welfare of the public[,]" id., at 11 (citing 53 P.S. § 65607); thus, appellant reasons, every discretionary action an elected official takes in furtherance of

---

[7] Although in this portion of its brief, the Commonwealth seemingly endorses the Superior Court's view, expressed in Parmar, that § 4701 incorporates the default culpability requirement of § 302(c), this position is at odds with its argument, infra, which rejects the incorporation of § 302(c)'s default culpability requirements into § 4701.

this duty may be viewed as enhancing political capital under the Commonwealth's view, constituting conferral of a benefit, and hence criminal liability for the offense of bribery.[8]

Appellant's sufficiency challenge is comprised of two basic claims: (1) he lacked the criminal intent required by § 4701 to be convicted of bribery since he did not act with corrupt motive in seeking to obtain extra money for the township in the sale of the parcel; and (2) the $500,000 increase in the purchase price did not constitute a benefit within the meaning of § 4501, since it would not have been received by him personally, but would instead have gone to the township.

Disposition of appellant's claims requires us to interpret §§ 4501 and 4701 to determine whether corrupt motive and personal benefit are required to sustain a bribery

---

[8] The Pennsylvania Intergovernmental Risk Management Association and the Pennsylvania State Association of Boroughs (amici) have filed an amicus brief on behalf of appellant, challenging the Superior Court's statement that "'no person in public service may solicit a benefit as a quid pro quo for his exercise of the official discretion he holds.'" Amicus Brief, at 13 (quoting Moran, at 280). Amici contend this is an overly broad interpretation of § 4701, and echo appellant's claim this violates the principle of strict construction of criminal statutes. Amici further contend that, if the Superior Court's decision is left to stand, it "would improperly criminalize legitimate negotiation, deliberation and decision-making by local governmental officials." Id. They argue the term "interested" as used in § 4501's definition of benefit — "any other person or entity in whose welfare [the beneficiary] is interested" — should be construed to mean a benefit provided to third parties or businesses in which a public official or a member of the official's family has an interest. They contend this interpretation is consonant with the definition of "conflict of interest" contained in the State Ethics Act, see 65 Pa.C.S. § 1102, which amici aver should be read in para materia with the bribery statute.

Amici also discuss general due process principles, noting a criminal statute that is not sufficiently definite in its terms and does not give persons of ordinary intelligence fair warning may be void for vagueness; amici seemingly suggest the Superior Court's interpretation of the bribery statute may implicate these concerns. Appellant alludes to this concern as well. See Appellant's Reply Brief, at 13. However, since appellant failed to raise any constitutional challenge to § 4701 below, we will not address such constitutional questions. See Pa.R.A.P. 302(a) (issues not raised in lower court are waived and cannot be raised for first time on appeal).

conviction under § 4701. "Because statutory interpretation is a question of law, our standard of review is <u>de novo</u>, and our scope of review is plenary. In matters of statutory interpretation, the General Assembly's intent is paramount." <u>Commonwealth v. Hacker</u>, 15 A.3d 333, 335 (Pa. 2011) (internal citation and quotation marks omitted) (citing 1 Pa.C.S. § 1921(a)). Generally, such "intent is best expressed through the plain language of the statute." <u>Commonwealth v. Hart</u>, 28 A.3d 898, 908 (Pa. 2011) (citations and internal quotation marks omitted). Thus, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "Every statute shall be construed, if possible, to give effect to all its provisions." <u>Id.</u>, § 1921(a). In construing or applying a statute's language, we may consult official comments that were published or generally available to the legislature prior to the statute's enactment, to the extent such comments are consistent with the statute's text. <u>See id.</u>, § 1939. Finally, as §§ 4501 and 4701 are penal statutes, they are to be strictly construed, <u>id.</u>, § 1928(b)(1), with any ambiguity being interpreted in favor of appellant, <u>see</u> <u>Commonwealth v. Clegg</u>, 27 A.3d 1266, 1269 (Pa. 2011) (citation omitted). However, we are not required to give the words of penal statutes their narrowest possible meaning or to disregard their common, approved usage; penal statutes are to be read in accordance with the "fair import" of their terms. <u>Hart</u>, at 908 (citations omitted).

Turning to appellant's claim that the Commonwealth was required to prove he acted with a corrupt motive, we find no such requirement in § 4701's language. As previously noted, <u>see</u> n.6, <u>supra</u>, § 4701 almost entirely mirrors MPC § 240.1; thus, we consider the official comments to § 240.1, which had existed for nearly a decade at the time the legislature drafted § 4701. <u>See</u> 1 Pa.C.S. § 1939.

The early version of § 240.1 originally defined bribery as the purposeful attempt to "influence corruptly" a public official. MPC § 208.10(1)(a) (Tentative Draft No. 8 1958). However, the comments to the final version of § 240.1 indicate the term "corruptly" was not included in the final version because the drafters believed this would obscure the section's scope of coverage — for example, by incorrectly suggesting one who justifies his conduct by claiming he only sought to counter opposing offers or to influence an official into making the right decision would not be guilty of bribery. See MPC § 240.1 cmt. at 196 (Proposed Official Draft 1962). Thus, because our General Assembly chose to adopt the MPC's formulation of bribery, which specifically deleted the limiting term "corruptly," we may presume the legislature endorsed the MPC's dispensation with the requirement of corrupt motive as an element of bribery. Since the legislature has chosen not to include such requirement, we will not rewrite § 4701 to supply it. See Commonwealth v. Mazzetti, 44 A.3d 58, 67 (Pa. 2012) ("This Court may not supply omissions in a statute, especially where it appears that the matter may have been intentionally omitted." (citation and internal quotation marks omitted)). Accordingly, we reject appellant's contention that his bribery conviction cannot be sustained because he lacked a corrupt motive.[9]

Regarding appellant's contention that he did not solicit a pecuniary or other benefit within the meaning of § 4501 because the money he solicited was to be paid to the township, not to him personally, the lower courts recognized § 4501 defines "benefit"

---

[9] Appellant's argument that he lacked corrupt motive loses much of its force when one considers his comment during the conversation — "[C]all it extortion, call it what you will." N.T. Trial, 11/19/07, at 112. A public official's offer to trade special treatment for money may be considered inherently corrupt, and appellant's words bespeak clear awareness of the extortionate nature of his solicitation. These words also evoke the unspoken other side of the coin — the undeniable implication that if the party solicited does not pay, there will be no zoning approval, much less an accelerated process.

broadly, so as to include situations where a public servant solicits money, gain, or advantage for "<u>any</u> other person or entity in whose welfare he is interested[.]" 18 Pa.C.S. § 4501 (emphasis added). The definition covering solicitation on behalf of a third party, such as a family member or spouse, is obviously included in the ambit of the statute.[10] In such situations, the public servant is still deemed the beneficiary, even though the benefit is received by a third party.

Here, the question is whether the township is an "entity in whose welfare [appellant] is interested[.]" 18 Pa.C.S. § 4501. Appellant's argument that his motive was solely to benefit the township clearly shows a considered interest, but neither § 4501 nor any other portion of the Crimes Code explicitly defines "entity," "interested," or "welfare." The parties advance conflicting yet viable interpretations of § 4701 as applied here, such that a latent ambiguity exists, requiring us to resort to principles of statutory construction for its resolution. <u>See</u> <u>Commonwealth v. McCoy</u>, 962 A.2d 1160, 1167 (Pa. 2009) (principles of construction are implicated where neither party's argument regarding interpretation of phrase in statute is so weak or implausible that statute can be called unambiguous). To ascertain the legislature's intent, we may consider: the occasion and necessity for the statute; the mischief it remedies; the object to be attained; the former law, including other statutes regarding the same or similar subjects; and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)(1), (3)-(6).

In examining § 4701's background, we find its official comment to be of particular significance. The comment establishes the General Assembly deliberately expanded

---

[10] <u>See</u>, <u>e.g.</u>, MPC § 240.1 revised cmt. at 24, 26 (1980) (explaining "benefit" is defined comprehensively in order to "reach every kind of offer to influence official or political action by extraneous incentives [such as] an offer to admit the child of a judge to a particular school, college, or private club in exchange for favorable action on a case[,]" and further explaining an offer of money to a wife or relative of a public official is punished "on the same terms as … an offer directly to that official").

the scope of the definition of benefit beyond conduct proscribed by § 4701's predecessor statute, 18 Pa.C.S. § 4303 (repealed),[11] to include "every possible type of offer made or designed to influence official action." 18 Pa.C.S. § 4701 cmt. The comment further emphasizes "this section is intended to prohibit selling political endorsement or special influence." Id.

There could be no clearer indication of legislative intent: the conduct § 4701 was intended to address is the exchange of privileged treatment in any governmental process for something of value. To ensure equality and impartiality in the legislative, judicial, and administrative processes, public servants are prohibited from exercising their influence more favorably for any person or entity willing to pay something of value, regardless of whether that value inures to the benefit of the public servant or the entity served. The statute's aim is to prevent the purchase of special influence and to ensure public servants retain the integrity in dealing that their position of public trust requires. Thus, payment to a governmental entity — such as the township — in exchange for the promise of special treatment — such as expediting the zoning process — by public servants who are officers or employees of that same body falls within § 4701's purview.[12]

We emphasize our holding applies only to situations where a public servant seeks or receives a benefit on behalf of a governmental entity from a third party in exchange for

---

[11] The former bribery statute prohibited the payment, delivery, or alienation of any "money, goods or other thing" to a class of enumerated government officials: "any member of the General Assembly, or any officer or employe of this Commonwealth, or of any political subdivision thereof, or any judge, juror, justice, referee or arbitrator[.]" Id.

[12] We reject amici's contention that the description of "benefit" found in the State Ethics Act's definition of "conflict of interest" is controlling. See 65 Pa.C.S. § 1102. The Ethics Act imposes a civil, not criminal, penalty and, unlike § 4701, specifically limits the type of benefit prohibited (pecuniary) and the category of recipient (the official, his immediate family, or a business to which he or an immediate family member belongs).

the promise to exercise special influence in the governmental process. We do not read § 4701 as applying to situations where public servants seek benefits for the governmental entity through the regular conduct of governmental affairs. It only becomes criminal where there is some offer of special treatment in exchange for something of value given to the official or the government entity he represents. From the standpoint of the public, and in particular the party solicited, it is patently improper for an official to condition successful or expedited completion of a legitimate process on payment of extra money — that extortionate process is what the bribery statute manifestly addresses. The public should not have the decisions of its officials affected by an applicant's acceptance or refusal of extra demands appended to the requirements of the lawful process. Neither should an applicant face the dilemma of paying to obtain expeditious approval, or not paying and facing continued uncertainty, non-expeditious treatment, and the potential enmity of the soliciting township officials. While perhaps the product of factors not relevant here, we are compelled to note GP chose not to pay, and finalization of the November, 2005 agreement's terms was not had for 18 months more.

Public servants may negotiate for a higher sales price for an asset owned by the governmental entity, or negotiate restrictions or conditions on the use of public property being sold. They may seek, during the ordinary course of the zoning process, to reserve or acquire property for uses they deem beneficial to the public they represent. Section 4701 does not hamper such negotiating abilities; to the extent the Superior Court's decision may be read as such, as suggested by appellant and amici, we disavow it. What public servants may not do is condition a "decision, opinion, recommendation, vote or other exercise of discretion" upon a solicitation for benefits beyond those inherent in the underlying transaction. Negotiating a higher price before agreeing to sell is one thing — linking a higher price to expeditious approval of zoning matters is quite another.

Zoning approval may be a condition of sale, but it cannot be disregarded by the seller in return for money or other benefit.

Applying these concepts to the instant matter, we conclude it was reasonable for the jury to find appellant's conduct in soliciting the extra $500,000 from GP was not merely a continuation of the negotiation process or a savvy attempt to drive a hard bargain. Rather, this was a specific promise of preferential treatment to GP in the zoning process, in exchange for half a million dollars in excess of the purchase price. Clearly, the jury was warranted in finding this was an offer to sell a specific zoning process and outcome in exchange for a payment of money to the governmental body,[13] and it was within the type of conduct § 4701 was intended to prohibit. Perhaps Commissioner Lewis put it best: a township cannot be in the business of selling zoning.

## II. TRIAL COURT'S REFUSAL TO CHARGE JURY ON CRIMINAL INTENT

### A. Applicability of 18 Pa.C.S. § 302(c)'s default culpability provision to offense of bribery in official and political matters

We turn to appellant's claim the trial court should have charged the jury that 18 Pa.C.S. § 302(c)'s default culpability requirements apply to § 4701. Appellant, relying on the Superior Court's decision in Parmar, argues § 4701 is not a strict liability statute and, therefore, § 302(c) applies. He further contends the failure to instruct the jury in this regard gave the jury the false impression that § 4701 is a strict liability offense and this was not harmless error because his state of mind during his phone conversation with Lawry was a critical issue.

---

[13] Section 4701(b) provides, "It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office, had left office, or lacked jurisdiction, or for any other reason." 18 Pa.C.S. § 4701(b). Thus, it is not an affirmative defense that the defendant lacked actual power to carry out the promised action.

The Commonwealth argues § 4701 does not include a culpable state of mind as an essential element of the offense, contending this signals the legislature's intent to abandon the traditional mens rea requirement. The Commonwealth points to the official explanatory note to § 240.1 of the MPC, on which § 4701 is based, which specifies it "abandons the usual focus upon 'corrupt' agreements or a 'corrupt' intent[.]" Commonwealth's Brief, at 16 (emphasis omitted) (quoting MPC § 240.1 explanatory note (2001)). The Commonwealth also notes the Pennsylvania Suggested Standard Jury Instructions do not include a specific statement regarding criminal intent as an element of § 4701. See Pa. SSJI (Crim) 15.4701A, 15.4701B. The Commonwealth further notes only a plurality in Parmar agreed § 302(c)'s default culpability provisions apply to § 4701, and thus, appellant's reliance on that decision is misplaced. In the alternative, the Commonwealth contends any error in the omission of an instruction on intent was harmless because it did not alter the outcome of the trial; the record, including appellant's own characterization that his actions might comprise extortion, contains irresistible evidence appellant's statements to Lawry were undertaken with the specific purpose of extracting additional money in exchange for preferential treatment in the zoning process, i.e., with criminal intent.

To determine the propriety of the trial court's jury instruction, we must address the threshold issue of whether a mens rea is required by § 4701, and if so, which level. This is a question of law; thus, our standard of review is de novo and scope of review is plenary. Commonwealth v. Roebuck, 32 A.3d 613, 615 (Pa. 2011) (citation omitted). We note absolute liability criminal offenses are "generally disfavored," and, absent indicia of legislative intent to dispense with a mens rea, a statute will not be held to impose strict liability. See Commonwealth v. Mayfield, 832 A.2d 418, 426-27 (Pa. 2003) (citations omitted). Although the imposition of strict liability is generally disfavored, this Court has

recognized the legislature may create statutory offenses dispensing with a mens rea in fields that are essentially non-criminal in order "to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." Commonwealth v. Koczwara, 155 A.2d 825, 827-28 (Pa. 1959). The penalty for such offenses concerning the public welfare is generally relatively light. Id., at 827.

Although § 4701 does not contain an express culpability requirement, this does not mean the legislature intended to dispense with the element of criminal intent. See Commonwealth v. Gallagher, 924 A.2d 636, 638-39 (Pa. 2007) (mere absence of express mens rea requirement in statutory crime is not indicative of legislative intent to impose strict liability (citations omitted)). Rather, "there is a long-standing tradition, which is reflected in the plain language of [§] 302, that criminal liability is not to be imposed absent some level of culpability." Id., at 639. Additionally, § 4701 is not a regulatory measure aimed at safeguarding the public welfare and health, nor is its penalty light, as is often the case with strict liability offenses; rather, it is a third degree felony punishable by up to three years imprisonment. Accordingly, we conclude § 4701 is not a strict liability offense; it requires proof of a mens rea.

Regarding the level of mens rea required to sustain a conviction under § 4701, we have repeatedly held § 302 provides the default level of culpability where a criminal statute does not include an express mens rea. See, e.g., id. (holding where offense of luring child into motor vehicle does not express any mens rea requirement with regard to victim's age, § 302(c) prescribes default culpability requirement); Commonwealth v. Ludwig, 874 A.2d 623, 630 (Pa. 2005) (observing generally where criminal statute does not expressly provide mens rea, General Assembly has provided default culpability provision in § 302(c), which determines appropriate element of culpability); Mayfield, at

427 (holding where relevant Crimes Code provision omits mens rea, § 302(c) supplies culpability).   The comment to § 302 also supports this conclusion, providing:

> The purpose of this section is to clearly define the various mental states upon which criminal liability is to be based.   Under existing law the words "wilfully" or "maliciously" are used in many cases.   However, these words have no settled meaning.   In some instances there is no expressed requirement concerning the existence of mens rea.   These defects in existing law are remedied by this section which sets forth and defines the culpability requirements and eliminates the obscurity of the terms "malice" and "wilful."

18 Pa.C.S. § 302 cmt. (emphasis added) (internal citations omitted).[14]

Thus, § 302 applies when a criminal statute does not express a specific mens rea. Section 4701 contains no language regarding mental state, and it is precisely this "defect[] in existing law" that § 302(c) was intended to remedy, see 18 Pa.C.S. § 302 cmt. We do not believe it was the legislature's intent that mental state be intuited from the language of the statute; absent summary offenses or absolute liability crimes, if there is no express wording indicative of a discrete mental state, § 302(c) applies.   Accordingly, as § 4701 includes no express culpability requirement, the Commonwealth must prove beyond a reasonable doubt that the public official was at least reckless in engaging in the conduct proscribed by the statute.[15]

---

[14]  Furthermore, the explanatory note to § 2.02(3) of the MPC, on which § 302(c) is based, see id. ("This section is derived from Section 2.02 of the Model Penal Code."), provides when the General Assembly intends intent, knowledge, or recklessness to suffice for the establishment of culpability for a particular offense, "the draftsmen need make no provision for culpability; it will be supplied by this subsection."   MPC § 2.02 explanatory note (2001).   Accordingly, the legislature's refraining from providing an express culpability requirement in § 4701 indicates its intent that § 302(c)'s default mens rea apply.

[15]  It is true that only a plurality of this Court in Parmar concluded § 302(c) provides the mens rea for § 4701.   Three Justices would have affirmed the Superior Court (Justice Newman, then-Chief Justice Flaherty, and then-Justice Castille).   The three Justices in (continued…)

Because § 4701 is not a strict liability offense and requires intentional conduct, appellant was entitled to have the jury instructed regarding the applicable mens rea for the offense, which is provided by § 302(c).   Therefore, the trial court erred in refusing to include such along with its instruction regarding § 4701's elements.   See Commonwealth v. Mason, 378 A.2d 807, 808 (Pa. 1977) (holding refusal to instruct jury concerning element of intent necessary to convict defendant of voluntary manslaughter was error).

## B.  Harmless error

Having determined the trial court erred in its refusal to instruct the jury regarding the applicable mens rea, we must address whether such error was harmless.   See Commonwealth v. Bullock, 913 A.2d 207, 217 (Pa. 2006).   "[U]nder the harmless error doctrine, the judgment of sentence will be affirmed in spite of the error only where the reviewing court concludes beyond a reasonable doubt that the error did not contribute to the verdict."   Id., at 218 (citation omitted).

Here, the trial court's jury charge tracked the language of § 4701(a) and the Pennsylvania Suggested Standard Jury Instructions.   The jury was apprised that, in order to convict appellant, it had to find he solicited money as consideration for his proposed action as a public official.   That is, the jury was instructed that a conviction required it to find he acted with the conscious objective of securing an additional payment

---

(…continued)
support of reversal (Justices Zappala, Cappy, and Nigro) expressed no opinion regarding the applicability of § 302(c), as the main question in Parmar was whether the Commonwealth could prosecute a public official under § 4701, a general statute, instead of under the specific provisions of the State Adverse Interest Act and State Ethics Act. Therefore, while Parmar is not controlling, it is instructive.   As this Court was evenly divided in Parmar, the Superior Court's decision was affirmed, holding § 302(c) supplied the culpability level for § 4701; therefore, at the time of appellant's trial, § 302(c) was the applicable mens rea, and the jury should have been so instructed.

from GP to the township in exchange for his exercise of official discretion in favor of GP. Such an instruction encompasses the definition of "intentional" within § 302; a fortiori, it encompasses knowing or reckless conduct. See 18 Pa.C.S. § 302(e). Indeed, there was no argument here that the call and its content were other than intentional, as described herein. It is only appellant's lack of a deliberately corrupt motivation that was at issue, and as noted above, motivation is not an element of the crime. If the solicitation was less than intentional or knowingly made, this might have been error, but the solicitation itself simply cannot be described as unintentional or unknowing.

Thus, the jury was advised appellant had to have acted intentionally to be convicted. Although the jury twice asked for the trial court to repeat its instruction, the reasons therefore are but speculation. There was nothing in the instructions given that could have led the jury to convict appellant of bribery on the basis of strict liability; all of the scenarios described as sufficient by the trial court required appellant to have acted with conscious objective toward each element of the statute, which elements we reiterate do not include a personal motive. See n.2, supra. Therefore, under these circumstances where the jury was not given the misimpression that § 4701 is a strict liability offense, and was made aware it had to find appellant acted intentionally in order to be guilty, we cannot find the trial court's refusal to instruct the jury regarding § 302(c) contributed to the verdict.

Order affirmed; jurisdiction relinquished.

Mr. Chief Justice Castille and Mr. Justice Stevens join the opinion.

Madame Justice Todd files a concurring opinion.

Mr. Justice Baer files a concurring and dissenting opinion, the dissenting portion of which is joined by Mr. Justice Saylor.