**[J-30-2024] [MO: McCaffery, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 96 MAP 2023 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court at No. 160 MDA |
| | : | 2022 dated January 6, 2023 |
| v. | : | Affirming the Judgment of Sentence |
| | : | of the Dauphin County Court of |
| | : | Common Pleas, Criminal Division, |
| MICHAEL L. STRUNK, | : | at No. CP-22-CR-0000106-2020 |
| | : | dated December 1, 2021. |
| Appellant | : | |
| | : | ARGUED:  April 10, 2024 |

## CONCURRING OPINION

**JUSTICE WECHT**                                    **DECIDED:  October 24, 2024**

The Majority concludes that the term "contact," as used in the statute prohibiting unlawful contact with a minor,[1] refers only to "communicative behavior not otherwise covered by the Crimes Code."[2]  I agree.  My path to that conclusion differs slightly from the Majority's.

Michael Strunk sexually assaulted a minor on at least three occasions.  Over the course of these assaults, Strunk touched the victim's breasts with his hands, inserted his fingers into her vagina, and engaged in sexual intercourse with her on at least two occasions.  For these acts, Strunk was convicted of two counts of sexual assault,[3] one count of aggravated indecent assault,[4] and three counts of indecent assault.[5]  That was

---

[1]    *See* 18 Pa.C.S. § 6318.

[2]    Maj. Op. at 2.

[3]    18 Pa.C.S. § 3124.1.

[4]    *Id.* § 3125(a).

[5]    *Id.* § 3126.  Strunk also was charged with, and convicted of, corruption of the morals of a minor.  18 Pa.C.S. § 6301.  That conviction is not challenged in this appeal.

not all.  Strunk also was charged with, and convicted of, unlawful contact with a minor, even though:

> there was no evidence that [Strunk] verbally communicated anything to [the victim] or gave her nonverbal signals to bring about the sexual contact.  [The victim] did not recall [Strunk] saying anything to her before or during any of the assaults and did not testify that he said anything sexual or related to the assaults during the intervening weeks and days between the assaults.  [The victim] testified that immediately after the first assault, [Strunk] whispered something in her ear and that she could not remember what he said, but that it was not a threat or a request that she not tell her mother.[6]

Under our Crimes Code, a person commits the offense of unlawful contact with minor when he:[7]

> is intentionally in contact with a minor, or a law enforcement officer acting in the performance of duties who has assumed the identity of a minor or of another individual having direct contact with children . . . for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
>> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).
>>
>> (2) Open lewdness as defined in section 5901 (relating to open lewdness).
>>
>> (3) Prostitution as defined in section 5902 (relating to prostitution and related offenses).

---

[6]    *Commonwealth v. Strunk*, 2023 WL 119395, at *4 (Pa. Super. 2023) (citations to the notes of testimony omitted).  For his convictions, unlawful contact with a minor included, the trial court sentenced Strunk to seventeen to thirty-five years in prison.  Specifically, the trial court sentenced Strunk to five to ten years in prison for the unlawful contact with a minor conviction.  The court ordered that this sentence for unlawful contact run concurrently with Strunk's five to ten year sentence for aggravated indecent assault.

[7]    18 Pa.C.S. § 6318(b) (grading unlawful contact of a minor as either a third-degree felony or the equivalent of the underlying offense for which the defendant contacted the minor, whichever is greater).

(4) Obscene and other sexual materials and performances as defined in section 5903 (relating to obscene and other sexual materials and performances).

(5) Sexual abuse of children as defined in section 6312 (relating to sexual abuse of children).

(6) Sexual exploitation of children as defined in section 6320 (relating to sexual exploitation of children).[8]

We agreed to review this case in order to determine the meaning of "contact" with a minor for purposes of Section 6318. Does "contact" refer to verbal (or nonverbal) communications intended to induce or facilitate the commission of sexually-related acts with a minor? Or, as the Superior Court in this case ruled, does it also include physical "contacts," *i.e.*, silently pulling down a victim's pants? Application of our rules of statutory interpretation leads inexorably to the former, not the latter, result.

The aim of statutory interpretation is to ascertain and give effect to the General Assembly's intent.[9] The best indicators of that intent are the words that the legislature chose, so long as those words are "clear and free from all ambiguity."[10] "When the words of a statute have a plain and unambiguous meaning,"[11] we are bound to apply them, as written, and we cannot disregard those words "under the pretext of pursuing [the statute's] spirit."[12] When the statutory language is unclear, or when the language is susceptible to two reasonable interpretations, our canons of interpretation are available in order to assist courts us in discerning legislative intent.

---

[8] *Id.* § 6318(a)(1)-(6).

[9] 1 Pa.C.S. § 1921(a).

[10] *Id.* § 1921(b).

[11] *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1071 (Pa. 2018).

[12] 1 Pa.C.S. § 1921(b).

In order to glean the meaning of the term "contact," we are bound to examine the term "according to [its] common and approved usage."[13] The problem is that "contact" is rather prevalent in our everyday vernacular and has numerous commonly understood meanings. "Contact" can refer to the physical touching of two objects, items, or forces. A physician might say that boiling water caused a third-degree burn as soon as it made "contact" with the patient's skin. A coach might describe football as a "contact" sport. Two people who bump into each other on a crowded street corner are said to have made "contact" with each other. "Contact" also can refer to various types of communications (or the lack thereof) or connections between people. When a person gets a toothache, he or she might "contact" a dentist. A disgruntled constituent often is encouraged to "contact" his or her representative or senator to lodge a complaint. People might say that, as time marched on, they lost "contact" with their college friends. "Contact" can refer to a messenger or inside source, *i.e.* a business "contact;" to a radio signal, *i.e.*, NASA loses "contact' with a space shuttle during re-entry into the Earth's atmosphere; to information used to get in touch with a person, *i.e.*, a school might ask for a parent's "contact" information; or to a person that can be reached in the event of an emergency, *i.e.*, an employer might ask an employee for an "emergency contact."

The point is that "contact" is not the type of term that, when used in a statute, automatically produces a singular meaning in a reader's mind. Indeed, it is not at all unreasonable to conclude that, when criminalizing "contact" with a minor, a legislature might want to prohibit either communicating with a minor in order to facilitate a sinister objective, the physical touching of a minor by an adult, or both. Thus, the term "contact" is ambiguous.[14]

---

[13]     *Id.* § 1903(a).

[14]     "A statute is ambiguous when there are at least two reasonable interpretations of the text." *A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016).

Upon determining that the "words of [a] statute are not explicit,"[15] the focus of statutory interpretation shifts from examining the statutory language to ascertaining the General Assembly's intent in enacting that statute. Here, ascertaining the General Assembly's intent is not as complicated as the Majority suggests. In fact, the intent could not be more clear: the purpose of this statute is to criminalize communicating with a minor in order to facilitate illicit interactions. To find the support for this conclusion, one need look no further than the remainder of Section 6318.

The General Assembly's chosen definition of "contact" speaks volumes, as does what the General Assembly chose not to say. Section 6318 defines "contact" as any "[d]irect or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system."[16] This definition speaks only about forms of communication. It says nothing—not one word—about physical contact between an adult and a minor.[17] Had the General Assembly intended contact to mean anything other than

---

[15]     1 Pa.C.S. § 1921(c).

[16]     18 Pa.C.S. § 6318(c).

[17]     The Dissent agrees that the term "contact," as used in this statute is ambiguous. Diss. Op. at 3. When a term is ambiguous, we "may go beyond the relevant texts and look to other considerations to discern legislative intent." *Commonwealth v. Giulian*, 141 A.3d 1262, 1268 (Pa. 2016). We consider, *inter alia*, "the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute." *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 984 (Pa. 2016); *see also* 1 Pa.C.S. § 1921(c). The Dissent eschews these considerations in favor of a blinkered focus upon a single word: "or". *See* Diss. Op. at 4-5. The Dissent maintains that the use of this disjunctive term can mean only one thing, that the General Assembly intended "contact" to refer to *both* physical contact and communication. It could. It also could mean that, by (continued…)

communication, it could have, and would have, said so in its definition of the term. It did not. Terms such as "touch" and "physical" do not appear anywhere in the statute.

Section 6318 not only criminalizes communications with a minor; it also makes it illegal to contact "a law enforcement officer acting in the performance of duties who has assumed the identity of a minor."[18] While the internet has provided countless benefits to society in recent decades, it also has created opportunities for some to engage in more nefarious behaviors. The internet provides a semi-anonymous platform for adults to chat with minors and, in some cases, to arrange for sexual encounters with those minors. In order to combat this escalating threat, law enforcement agencies direct undercover officers to pose as minors on the internet and to engage in online conversations with adults seeking sexual relations with minors. Through the use of these online communications, law enforcement can identify, and arrest, these online predators. In 2007, the General Assembly added the particular provision in question to the statute in order to ensure that individuals who believe that they are talking to a minor, but who

---

using the phrase "contact or communication by any means," the General Assembly intended to criminalize a broad array of communicative interactions between human beings. For instance, the General Assembly reasonably could have intended "contact" to mean electronic communications, *i.e.*, contact, and simultaneously could have intended "communication" to mean verbal expressions, *i.e.*, communication. The term "contact" can mean many different things, not only the two upon which the Dissent insists. Thus, the Dissent's assertion notwithstanding, my interpretation of the term does not render the word "or" superfluous. We cannot find an element of physical contact where no such term appears in the statute. *See Snyder Bros., Inc. v. Pennsylvania Pub. Util. Comm'n*, 198 A.3d 1056, 1086 (Pa. 2018) (Mundy, J., dissenting) (emphasizing that courts cannot add terms to a statute under the guise of interpreting that provision). Yet the Dissent does so. In focusing upon only one word in the statute, the Dissent ignores a host of other relevant interpretive factors, including (*inter alia*) the absence of any language suggesting a physical component, the inclusion of the provision governing communications with law enforcement officers, the fact that the jurisdictional aspect of the statute speaks only to communication, the absurd results that would follow the Dissent's interpretation, and the rule of lenity.

[18]     *Id.* § 6318(a).

actually are talking to a law enforcement officer, do not escape prosecution.[19] By expanding the reach of the statute to include online communications with undercover law enforcement officers, the General Assembly made it very clear that the intent underlying Section 6318 is to criminalize communications, not sexual conduct, which conduct the General Assembly already has addressed in numerous other parts of the Crimes Code.

The "concurrent jurisdiction" portion of Section 6318 provides additional proof. That portion of the statute affords jurisdiction to prosecute the crime to the Office of the Attorney General when a person "contacts a minor through the use of a computer, computer system or computer network."[20] The General Assembly's use of the term "contact" here can be interpreted in only one way: as a form of communication. One cannot touch another person physically through a computer or computer network. It stands to reason that the General Assembly did not intend the term "contact" to mean one thing in one part of the statute and something completely different in another part. Once more, the General Assembly spoke only to communicative acts, not physical ones.

Every nook and cranny of Section 6318 tells the same tale. This is a crime meant to stop adults from communicating with minors for prurient purposes. The text of the statute allows no other interpretation. No other evidence exists that even suggests otherwise. And even if the statutory language does not slam the door entirely on a different interpretation, the rule of lenity, which requires that all "penal provisions" be strictly construed, does.[21]

---

[19]    *See* 2006, Nov. 29, P.L. 1567, No. 178, § 3 (effective Jan. 1, 2007).

[20]    18 Pa.C.S. § 6318(b.1).

[21]    *See* 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Cousins*, 212 A.3d 34, 39 (Pa. 2019) ("Under the rule of lenity, when a penal statute is ambiguous, it must be strictly construed in favor of the defendant.").

To conclude otherwise, *i.e.*, to hold that "contact" must mean physical touching, would require us to ignore the facts that: (1) the statute refers exclusively to forms of communication; (2) the General Assembly included a provision governing discussions between an adult and an undercover officer posing as a child; (3) the jurisdictional provision speaks only to communications; and (4) perhaps most importantly, the statute does not use the word "touch" or "physical" anywhere. Such an interpretation lacks textual support, and also would produce odd, and clearly unintended, results.

The crime is structured like this. An adult must "contact" a minor "for the purpose of engaging" in one of the enumerated sexually-related categories of offenses. Consider now how this would work if "contact" means "touching." Imagine that an adult touches a child on the neck for prurient purposes.[22] With that touch, the adult has committed the crime of indecent assault of a child.[23] However, if "contact" means "touching," then that same touch simultaneously, and automatically, also constitutes unlawful contact with a minor. In other words, every time that an adult commits an indecent assault, he also necessarily commits unlawful contact with a minor. This is true as well of rape, statutory sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault, sexual assault, institutional sexual assault, and sexual assault by a sports official, each of which requires some form of physical touch. There is no indication in the statute that suggests, let alone mandates, that unlawful contact with a minor operates as a strict liability offense. The text of the statute proves the contrary. It requires the Commonwealth to prove that the adult acted "intentionally."[24] The statute cannot both be

---

[22]     *See Commonwealth v. Gamby*, 283 A.3d 298, 314 (Pa. 2022) (holding that the neck is an intimate part of the body for purposes of indecent assault).

[23]     18 Pa.C.S. § 3126(a).

[24]     *Id.* § 6318(a) ("A person commits an offense if the person is *intentionally* in contact with a minor. . . ." (emphasis added)).

a strict liability offense and contain a *mens rea* element. To construe "contact" to mean "touching" effectively would write the *mens rea* out of the statute, which we cannot do.[25] Moreover, automatic and absolute liability is undoubtedly not what the legislature intended with this statute. Since due process principles generally require proof of *mens rea*,[26] strict liability "offenses are generally disfavored, and, absent indicia of legislative intent to dispense with a *mens rea*, a statute will not be held to impose strict liability."[27] No such indicia can be found anywhere in this statute. In fact, inclusion of a *mens rea* indicates the exact opposite.

The text of the statute, the rule of lenity, and consideration of the clearly unintended consequences of a contrary interpretation provide conclusive evidence that the General Assembly intended "contact" to mean "communicative behavior not otherwise covered by the Crimes Code."[28] The analysis should end here. However, the Majority goes further, relying upon a lengthy quote from a speech given by one (and only one) member of the Pennsylvania House of Representatives before the unlawful contact with a minor statute was passed.[29] As I have explained in the past, resort to isolated statements of legislators in order to prove the broader intent of the legislative body that underlies a statutory provision is a flawed jurisprudential methodology.[30] Doing so runs the risk of abdicating our duty to interpret the statutory language as written, and does not offer a reliable

---

[25] *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

[26] *See Staples v. United States*, 511 U.S. 600, 605-06 (1994).

[27] *Commonwealth v. Moran*, 104 A.3d 1136, 1149 (Pa. 2014) (internal quotation marks omitted).

[28] Maj. Op. at 2.

[29] *Id.* at 16-19 (quoting Pa. H. J., 1997 Reg. Sess. 52 at 1750-51).

[30] *See, e.g., Harmon v. Unemployment Comp. Bd. Of Rev.*, 207 A.3d 292, 311-12 n.6&7 (Pa. 2019) (Wecht, J., concurring); *Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n*, 198 A.3d 1056, 1081-84 (Pa. 2018) (Wecht, J., concurring).

interpretive tool . "Our goal is not to ascertain and effectuate the intent of [Representative Matthew E. Baker];"[31] it is to ascertain the intent of the legislative body as a whole. Predicating an interpretation, even slightly, upon statements of individual legislators "is not a reliable indication of the intent of the entire House," and it "tells us nothing whatsoever about the intent of the Senators who also voted" to create the crime.[32] Such unreliable extrapolation of one representative's thoughts to the body as a whole is particularly unnecessary in a case like this, where overwhelming evidence of the General Assembly's intent can be found merely by reading the statute. Because the Majority is willing to indulge this species of "legislative history,"[33] I am unable to join its thorough opinion.

I also part ways with the Majority inasmuch as it leaves *Commonwealth v. Velez*[34] on the books. In that case, a woman opened a door to the family room in her home only to see her eight-year-old daughter lying on the bed naked from the waist down with the defendant's head between her legs.[35] There was no evidence whatsoever that the defendant had spoken to the girl, or otherwise had communicated with her in order to facilitate the sexual conduct. Nonetheless, the Superior Court held that there was

---

[31]     *Harmon*, 207 A.3d at 312 (Wecht, J., concurring).

[32]     *Id.*

[33]     The term "legislative history" can mean two things. The type of "legislative history" that should be viewed with "healthy caution, skepticism, and discipline," *Snyder Bros.*, 198 A.3d at 1083 (Wecht, J., concurring), ordinarily takes the form of committee reports or floor statements made by legislators in support of (or opposition to) a particular bill. The other form of "legislative history" attempts to ascertain a statute's intent by considering additions to, or subtractions from, the text of a statute over time. Unlike statements by individual legislators or committee staff reports, this latter form of "legislative history" can offer useful insight into the General Assembly's intent with regard to a particular statute.

[34]     51 A.3d 260 (Pa. Super. 2012).

[35]     *Id.* at 262 (citation omitted).

sufficient evidence to convict the defendant of unlawful contact with a minor. In ruling that the defendant had "contacted" the girl, the court held that it was "reasonable to *infer* that [the defendant] directed the victim, either verbally or nonverbally, to unclothe below the waist and to assume that pose."[36]

Our decision today does not foreclose the possibility that a non-verbal action can suffice as proof of the communication necessary for unlawful contact with a minor. For instance, a nod of the head or pointing a finger can clearly convey a message. What today's ruling does foreclose is finding that a "contact" automatically occurs whenever an adult engages in a sexual encounter with a minor. The Commonwealth must prove some form of communication between the adult and the minor and that the adult's communication was made for the purpose of facilitating a sexual encounter. *Velez* demands no such thing. Instead, it allows juries and courts to infer automatically that a communication occurred upon no other proof than the fact that the defendant was engaged in a sexual act with a minor. But, no crime can be inferred by the commission of another. Unlawful contact with a minor is not a strict liability offense. It is a separate, substantive offense, with an express *mens rea*, and all of its elements must be proven beyond a reasonable doubt. I would overrule *Velez* here and now, as it relieves the Commonwealth of its burden to prove an essential element of unlawful contact with a minor.

Respectfully, for these reasons, I concur only in the result of the Majority's opinion.

Justice Donohue joins this concurring opinion.

---

[36] *Id.* at 267 (emphasis added).